UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MAYCIE BUTLER,                )
                              )
        Plaintiff,             )        Case No. 1:11-CV-09
v.                            )
                              )        Chief Judge Curtis L. Collier
RUE 21, INC.,                 )
                              )
        Defendant.             )

# MEMORANDUM

Before the Court is Plaintiff Maycie Butler's ("Plaintiff") motion to remand (Court File No. 6), to which Defendant Rue 21, Inc. ("Defendant") responded (Court File No. 9) and Plaintiff replied (Court File No. 11). Defendant subsequently filed a motion to strike Plaintiff's reply brief and supplemental affidavit (Court File No. 12). For the reasons discussed below, the Court will **GRANT** Defendant's motion to strike (Court File No. 12) and **DENY** Plaintiff's motion to remand (Court File No. 6).

## I.  MOTION TO STRIKE

Defendant has moved to strike Plaintiff's reply brief and supplemental affidavit of H. Eric Burnette, claiming Plaintiff has improperly advanced new arguments and relied on new evidence for the first time in her reply. Plaintiff argues she "did nothing in her reply brief but reply" to the argument the November 19, 2010 email did not trigger the 30-day period for removal under 28 U.S.C. § 1446(b). Plaintiff also contends Defendant's ability to respond to new information has not been vitiated due to its ability to file a surreply and because Defendant included "lengthy footnotes attacking the merits of Plaintiff's reply brief" as part of its motion to strike (Court File No. 14).

At issue are communications between the parties leading up to emails from Defendant on

October 27 and November 19, 2010. Plaintiff refers to a November 19, 2010 email in her opening brief and describes settlement communications during this time as being "first discussed between counsel in late October 2010" (Court File No. 7, p. 6). Plaintiff claims a demand was made of $1 million on or about October 27, 2010 (*id.*). In Defendant's response, Defendant refers to a telephone conference with Plaintiff's counsel on October 27, 2010. During this conversation, Defendant claims there was discussion regarding Defendant's desire to obtain a settlement demand to pass on to his client. Defense counsel followed this conversation with an email to confirm the discussion but there was no response from Plaintiff (Court File No. 9, p. 5). In Plaintiff's reply brief, Plaintiff provides details of conversations between counsel leading up to the November 19, 2010 email. The dates of these conversations are unspecified, they purportedly occurred "[i]n the days prior" to the November 19, 2010 email (Court File No. 11, p. 3). Plaintiff describes the topics of these conversations, including Plaintiff's explanation for arriving at the figure of $1 million for the amount of damages (*id.*). Plaintiff also describes a telephone call "at some point" with Defense counsel regarding a counteroffer, which was never mentioned in her opening brief (Court File No. 11-1, p. 2). In support of these new facts, Plaintiff attached a supplemental affidavit of H. Eric Burnette (Court File No. 11-1).

The Court finds by introducing new facts and considerable details surrounding the communications between the parties and supporting them with additional extrinsic evidence, plaintiff is not "directly reply[ing] to the points and authorities contained in the answering brief. *See* E.D. TN LR7.1(c). Plaintiff's reply brief instead contains new evidence and arguments, which should have been raised in the initial motion. Because these new arguments and evidence of oral communications offer only marginal support to the Court's determination of when the case had

become removable based on an "amended pleading, motion, order or other paper," the Court finds a surreply from the defendant is unnecessary. Accordingly, rather than belabor the details of the controversial telephone communications between the parties, the appropriate remedy is to strike Plaintiff's reply brief and supplemental affidavit rather than allow Defendant to file a surreply.

The Court will therefore **GRANT** Defendant's motion to strike Plaintiff's reply brief and accompanying affidavit (Court File No. 12). These materials were not considered in reaching a disposition of Plaintiff's motion to remand.

## II. MOTION TO REMAND

Plaintiff asks the Court to remand this action based on untimely removal. Although no amount of damages was specified in the complaint, Plaintiff claims Defendant was aware the amount-in-controversy exceeded $75,000 more than thirty days before removal occurred. Defendant removed this action five days after it received a demand letter from Plaintiff and claims this demand letter was the first "paper" from which it could be ascertained the amount-in-controversy exceeded the jurisdictional threshold. The Court must now examine various points in the parties preliminary interactions and settlement negotiations to assess when the thirty-day period for removal began to run.

### A. RELEVANT FACTS

Plaintiff, a citizen of Tennessee, filed a complaint against Defendant in the Chancery Court of Hamilton County, Tennessee, on June 16, 2010, asserting claims of gender and pregnancy discrimination under the Tennessee Human Rights Act ("THRA"). Defendant, a Delaware corporation, has its principal place of business in Warrendale, Pennsylvania. Plaintiff's complaint,

although it did not include an ad damnum clause, sought relief in the form of: back-pay, compensatory damages, including damages for humiliation and embarrassment, pain and suffering, emotional distress, and attorney's fees (Court File No. 1-1, pp. 1, 4). In addition, Plaintiff sought injunctive relief requiring Defendant to re-employ Plaintiff or in the alternative, "front pay and benefits in lieu of reinstatement" (*id.* at p. 4). A "Civil Cover Sheet" was included with the filing of the complaint and Plaintiff indicated "$100,000 +" next to "Total amount sued for"(Court File No. 6-1). Defendant states he was not served with a copy of this cover sheet and was not made aware of it until two days after the action had been removed (Court File No. 9, p. 4). This cover sheet was not included among those provided to Defendant in response to a request for production of documents pertaining to the amount of alleged damages (Court File No. 9-2, p. 8).

In "Plaintiff's Responses to Defendant's First Set of Interrogatories" (Court File No. 9-11, pp. 12-13), Plaintiff provided the following information relevant to damage calculation:

> INTERROGATORY NO. 17:
> Please identify and state with particularity all damages you claim to have sustained and for which you seek recovery in this matter. State separately the amount of damages claimed with respect to each such category or type of damages (*e.g.*, back-pay, compensatory damages, punitive damages, *etc.*) and describe separately the computations used in arriving at the amount claimed with respect to each such category or type of damages.
>
> **RESPONSE: At the time of my termination, I was earning $280.00 a week. With the exception of the small amount I earned assisting my mother at Catoosa County Schools, I will be claiming $280.00 per week in lost wages until the date of trial, to be offset by the amount I earn in future employment prior to trial. Additionally, I will be seeking damages for humiliation and embarrassment in an amount to be determined by a jury, my costs and attorney fees, front pay in an amount to be determined by the Court, and any other relief available to me under the law.**

(*Id.*). This response was served on Defendant on August 26, 2010 (*id.* at p. 14).

On July 2, 2010, Plaintiff's counsel spoke with Defendant's counsel and when asked if a settlement demand would be made, Plaintiff's counsel replied something like "a million dollars will get it done" (Court File No. 9-2 at ¶ 5). Plaintiff's counsel followed this remark by informing defense counsel that he would speak to plaintiff and provide a settlement demand in a few weeks (*id.*). A similar conversation was also held on October 27, 2010, wherein Plaintiff's counsel indicated they would settle for $1 million, but obviously, they would settle for less than that (*id.* at ¶¶ 8-9; Court File No. 9-3 at ¶¶ 5-6). Later that day, Defendant's counsel sent an email, in part, "to confirm the settlement offer of $1 million, which we will relay to the client," but received no response from opposing counsel (Court File No. 9-3 at ¶ 6 and Exhibit A; Court File No. 6-4, p. 5).

Defense counsel Eric Smith again tried to verify the validity of the settlement offer on November 19, 2010 in the following email:

> As I understand it, when you spoke with Chip on October 27, you told him that Ms. Butler would settle the case for $1 million. My question is, were you intending to make a bona fide settlement offer? In other words, is Ms. Butler making a $1 million settlement demand? If so, I will communicate the offer to my client, as the Rules of Professional Responsibility require me to do for all settlement offers. Please let me know either way.

(Court File No. 9-2, p. 11; Court File No. 6-4, p. 5). Plaintiff's counsel replied the same day:

> We will settle the case for 1 million. We will obviously take less than that but it is a start since Chip told me he needed a demand. If your client is interested in talking seriously about settlement please let me know.

(Court File No. 9-2, p. 10; Court File No. 6-4, p. 4). On November 22, 2010, Defendant's counsel sent the following reply:

> So, what you're saying is that your client will settle the case for somewhere between $0 and $1 million. This statement of the obvious is not even a "start" as you say. Rather, it strikes me as an attempt to get my client to start the bidding. I try to get an early settlement offer in every case I defend so that I can get my clients to consider

5

> the cost of early settlement against the backdrop of our initial case assessment and estimated defense costs. This enables them to make a more informed decision about whether it makes sense to pursue an early settlement. Your revelation that Ms. Butler will settle for $1 million or less won't get this ball rolling.
>
> As to you inquiry about whether my client "is interested in talking seriously about settlement," the short answer is, I don't know. I've never really teed the subject up with them because there's never been anything to talk about. And, I still see no point in going down that road with my client given that there is nothing to suggest that Ms. Butler is interested in talking seriously about settlement, or that she may be willing to settle for an amount that makes sense.
>
> In the interest of keeping the door open, if only just a crack, can you at least give us a dollar-amount range within which you believe early settlement discussions would be worthwhile? Is there any chance that your client would settle the case for less than six-figures at this point? If not, is her bottom-line settlement number in the $100,000-$250,000 range, the $250,000-$500,000 range, etc.? Unless you provide some real information about what she is looking for, we will never know whether it makes sense to talk seriously about settlement.

(*Id.*). Defense counsel made another inquiry into the settlement demand on January 3, 2011, in response to opposing counsel's communication regarding possible mediation.

> Hello Eric. Chip indicated that you recently asked whether [Defendant] is willing to participate in a private mediation. Some informal settlement discussions must take place before [Defendant] will consider private mediation as an option. At this point, we have no idea whether a private mediation would be worthwhile because we have no idea what [Plaintiff] thinks she is entitled to or even a dollar-amount range within which she might settle. If you think mediation might be worthwhile, I would suggest that you provide us with a settlement demand that we can present to [Defendant]. Although you previously stated that [Plaintiff] is willing to settle for $1 million or less, that statement is not a settlement demand, nor is it otherwise sufficient to get the ball rolling.

(Court File No. 9-2, p. 13).

On January 14, 2011, Plaintiff's counsel emailed an "initial demand" letter to Defendant's counsel seeking a $365,000 settlement demand (*id.*, pp. 15-18). In the first paragraph of the letter, Plaintiff's counsel states he has had a conversation with Plaintiff, and is "prepared to make an initial demand at this time" (*id.* at 16). Plaintiff supports this amount as follows:

> Your client's exposure in this matter is considerable. Hamilton County juries are not adverse to awarding damages for humiliation and embarrassment far out of proportion to actual monetary damages. In two recent jury trials, we had one jury return a verdict of $100,000.00 with back-pay proof of only $13,000.00, and one return a verdict in the amount of $300,000.00, with back-pay proof of only one-tenth of that. I am also enclosing some data indicating that the median award in gender discrimination cases is $200,000.00, with the odds of a Plaintiff's verdict being 62%.

(Court File No. 9-2, p. 16).

Defendant filed a Notice of Removal on January 19, 2011 (Court File No. 1), asserting diversity jurisdiction and relying on the January 14, 2011 letter to establish that the amount-in-controversy exceeds $75,000. Plaintiff filed the instant motion to remand and supporting memorandum on January 25, 2011 (Court File Nos. 6, 7). Plaintiff contends Defendant's removal is untimely as it was made more than thirty days after the case became removable.

### B. STANDARD OF REVIEW

A defendant may remove any civil action filed in state court to federal court if the district court would have had subject matter jurisdiction had the case been originally filed in federal court. 28 U.S.C. § 1441. The removing party bears the burden of establishing removal was proper. *Conrad v. Robinson*, 871 F.2d 612, 614 (6th Cir. 1989). The removal period begins when a defendant receives a copy of the initial pleading setting forth the removable claim and the removability "must be readily ascertainable from the face of the pleading." *Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins.*, 5 F.3d 963, 968 (6th Cir. 1993). Where "a case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). In any case removed from state court, the federal district court shall remand the case if

it appears the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

The removal statute is construed strictly and narrowly against removal in order to avoid encroachment on state court jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Her Majesty the Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). If doubt exists as to the propriety of removal, the case should be remanded to state court. *Union Planters Nat'l Bank v. CBS, Inc.*, 557 F.2d 84, 89 (6th Cir. 1977); *see also Smith v. Nationwide Prop. & Casualty Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007)("All doubts as to the propriety of removal are resolved in favor of remand.").

### C. DISCUSSION

Diversity jurisdiction exists where a lawsuit is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. A defendant removing a case to federal court on the basis of diversity of citizenship jurisdiction has the burden of proving these jurisdictional requirements exist at the time of removal. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). Generally, the amount claimed by a plaintiff controls, however, where there is an unspecified amount in controversy, a defendant satisfies the burden of removal "when it proves that the amount in controversy more likely than not exceeds $75,000." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (citations omitted).

The parties do not dispute the requirements for diversity of citizenship and the amount in controversy are met. The sole issue presently before the Court is whether the case was removable prior to the January 14, 2011 demand letter. Plaintiff points to the civil cover sheet, the complaint, Plaintiff's response to an interrogatory, and settlement communications in October as triggering the statutory time for removal. Plaintiff claims the defendant had sufficient notice the amount-in-

8

controversy was at least $75,000 and the statutory thirty day period had expired prior to removal on January 19, 2011. After reviewing the parties' filings and supporting documentation, the Court concludes the defendant did not receive an appropriate paper to trigger removal prior to the January 14, 2011 demand letter.

Plaintiff claims the action was first removable based on the complaint and civil cover sheet filed on June 6, 2010. The complaint does not include an ad damnum clause, but Plaintiff contends a fair reading of the complaint put Defendant on notice of the amount-in-controversy based on the open-ended type of relief sought. Plaintiff urges the Court to apply a "reasonably qualified attorney test" to determine when the defendant could reasonably have ascertained satisfaction of the jurisdictional amount. Despite Plaintiff's arguments to the contrary, the test of whether a complaint is removable does not include examining the experience level of the defense counsel and their constructive knowledge of potential attorney fees or damages in "these types of cases." Rather, "[t]he intent of § 1446(b) is to make sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 466 (6th Cir. 2002)(citations omitted). This Court has not adopted a "reasonable attorney test" and agrees with the Western District of Kentucky's rejection of such a test, finding "it focuses too much attention on attorney competence, rather than the substance of the pleadings." *McCraw v. Lyons*, 863 F.Supp. 430, 434 n.9 (W.D. Ky. 1994).

In light of the strict construction of § 1446(b), "[t]he removability of the action must be readily ascertainable from the face of the pleading." *Tech Hills II*, 5 F.3d at 968. The thirty day period should begin to run "from the date that a defendant has solid and unambiguous information

9

that the case is removable." *Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573 at *3 (Table), No. 90-1358, 1991 WL 112809 (6th Cir. June 26, 1991). Based on Plaintiff's generalized demand for back-pay, compensatory damages, including damages for humiliation and embarrassment, pain and suffering, emotional distress, and attorney's fees, the amount sought is not readily ascertainable from the face of the complaint. The allegations in the complaint do not establish the amount of damages would more likely than not exceed $75,000. The pleading simply fails to provide solid and unambiguous information as to the amount.

The civil cover sheet included a figure of $100,000+" as the total amount sought, however, this document was not served with the initial complaint and the defendant did not receive this document until Plaintiff filed her motion to remand on January 25, 2011 (Court File Nos. 9, p. 11; 9-2 ¶¶ 21-24; 9-3 ¶¶ 11-12). This document was also not included with Plaintiff's production of any and all documents relating to the amount of Plaintiff's alleged damages served by Defendant on July 13, 2010 (Court File No. 9-2, p. 8). The civil cover sheet therefore cannot trigger the thirty day period as it is and administrative document not considered part of the initial pleading, *see* Hamilton County Chancery Court Rules, No. 3.02, and more importantly, it was not received by the defendant until after removal. *See* 28 U.S.C. § 1446(b)(requiring "receipt by the defendant" to trigger the thirty day period).

Plaintiff's response to Defendant's interrogatory provides a basis for calculating lost wages, but does not offer greater certainty as to amounts attributable to attorney fees, humiliation and embarrassment, or front pay. Plaintiff's response "I will be claiming $280.00 per week in lost wages until the date of the trial, to be offset by the amount I earn in future employment prior to trial" only afforded an estimate of a back pay award of about $28,000 for a two-year period. This, without

more would not support removal by Defendant. *See Spaulding v. Winn-Dixie Montgomery, Inc.*, No. 1:04-CV-205, 2004 U.S. Dist. LEXIS 25549 (E.D. Tenn. Sept. 3, 2004)(finding the defendant failed to establish the jurisdictional amount where "defendant is only able to calculate plaintiff's damages for lost wages to be $27,520" and mere speculations of plaintiffs' attorney's fees, emotional distress, "without more, are insufficient to prove it more likely than not that the plaintiffs' claims exceed" $75,000).

Finally, Plaintiff refers to an "October 2010 Settlement Demand" as triggering the statutory thirty days. Plaintiff argues the demand letter sent in January 2011 was not the first demand made, rather "it was simply the first one Defendant chose to take seriously" (Court File No. 7, p. 6). Although the oral communications, confirmatory email sent by defense counsel, and email communication on November 19, 2010 all reference a $1 million amount, none satisfies the "other paper" requirement of § 1446(b). The October 2010 conversations between the parties were oral and per the plain language of § 1446(b) cannot constitute "other paper." Defendant's email to confirm whether or not a settlement demand had been made was created entirely by the defendant and does not meet the "receipt by the defendant" requirement of § 1446(b). To allow a defendant to generate its own documents to establish the removability of an action would invite abuse of the limited statutory authority to remove. The email communications on November 19, 2010, add no greater clarity to the amount-in-controversy as Plaintiff's response undercuts any interpretation the $1 million figure was an actual settlement demand. A defendant is not in receipt of unambiguous information regarding the jurisdictional amount-in-controversy when it is accompanied by statements such as "[w]e will obviously take less than that" and "[i]f your client is interested in talking seriously about settlement please let me know." The November 22, 2010 email

11

communication sent by Defendant further emphasizes the lack of unambiguous information surrounding the amount in controversy.

On January 14, 2011, Plaintiff's counsel emailed a letter to opposing counsel and in the transmittal, stated "[a]ttached please find our initial demand." The attached letter (Court File No. 9-2, pp. 16-18) includes details as to amounts of damages and clearly and unequivocally contains a claim for the amount of $365,000. In the first paragraph, Plaintiff's counsel indicates he is "prepared to make an initial demand at this time" (*id.* at 16). Unlike the qualified and ambiguous nature of previous interactions between the parties, this "other paper" received by the defendant on January 14, 2011, is the type contemplated by § 1446(b). The strict construction of the removal statutes requires courts to construe ambiguity in favor of remand, thus any attempt by Defendant to remove before receiving this clear statement by Plaintiff from which it could ascertain the amount would not have succeeded. The Court finds this demand letter was the first "other paper" upon which Defendant could ascertain the case was removable. The Court recognizes the need for an objective clarity when relying on a pleading, motion, order or other paper to support removal. Delving into the subjective knowledge of each attorney and the ordinarily confidential preliminary negotiations between them should be discouraged when assessing whether removal was timely or proper.

Accordingly, the Court finds Defendant's removal on January 19, 2011, five days after receipt of Plaintiff's initial demand letter was proper. The defendant timely removed within thirty days of receiving an other paper from which it could first be ascertained the jurisdictional amount in controversy was met. Because the removal occurred less than one year after the complaint was filed and the defendant has properly exercised its congressionally bestowed right to remove, the case

will proceed in federal court.

**III.    CONCLUSION**

As discussed above, the Court will **GRANT** Defendant's motion to strike (Court File No. 12) and **DENY** Plaintiff's motion to remand (Court File No. 6).

An Order shall enter.

                                        **/s/**
                                        **CURTIS L. COLLIER**
                                        **CHIEF UNITED STATES DISTRICT JUDGE**