UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MAYCIE BUTLER,                          )
                                        )
        Plaintiff,                      )
                                        )       1:11-CV-9
v.                                      )       *Collier / Lee*
                                        )
RUE 21, INC.,                           )
                                        )
        Defendant.                      )

# ORDER

Before the Court is Defendant's motion to compel responses from Plaintiff to certain discovery requests [Doc. 23]. To Plaintiff, this is a dispute about whether a plaintiff opens her entire medical history to her former employer's scrutiny merely because she claims she was embarrassed and humiliated by her former employer's unlawful acts. To Defendant, it is a dispute about whether a plaintiff may claim she was emotionally injured by her former employer's lawful actions without producing information about other possible causes for her emotional condition. To the Court, it is properly a matter of whether certain discovery requests are reasonably calculated to lead to the discovery of admissible evidence.

## I.    BACKGROUND

Plaintiff was an assistant manager for Defendant (a retail clothing store specializing in young adult clothing) from October 4, 2009, until December 3, 2009, when she was fired. Plaintiff alleges she found out she was pregnant in November, was pressured to have an abortion, and then was fired for deciding to carry her pregnancy to term. She filed suit claiming a hostile work environment and discriminatory discharge. Plaintiff seeks reinstatement, back pay, attorney's fees, and as relevant here, "additional compensatory damages, including damages for humiliation and embarrassment,

pain and suffering and emotional distress." [Doc. 1-1 at Page ID # 13]. Investigating those allegations, Defendant propounded interrogatories and requests for production, only a few of which are at issue here.[1]

### A. Interrogatory 6

Defendant's Interrogatory 6 asks Plaintiff to identify "each health care provider . . . who has examined you . . . [or] provided treatment to you [or] with whom you have consulted . . . from April 18, 2007 to the present."[2] For each such provider, Plaintiff was asked to "state the date(s) and reason(s) for each such examination, treatment, and/or consultation ... [and] any diagnosis or prognosis made and any treatment" received. Plaintiff responded that this interrogatory was "not reasonably calculated to lead to the discovery of admissible evidence." Plaintiff explained her position that her "health history, with the exception of her recent pregnancy, is not relevant to the issues involved in this litigation."

### B. Request for Production 13

Similarly, Defendant's Request for Production 13 asked for "[a]ny and all medical records . . . of any healthcare providers . . . who have examined you, diagnosed you, provided treatment to you (including therapy), counseled you, or with whom you consulted at any time from April 18, 2007 to the present." "In lieu of" producing the documents, Defendant asked Plaintiff to execute an authorization form allowing Defendant to procure those records. Plaintiff responded by

---

[1] Defendant's motion sought to compel a response to Request for Production 12, but the parties agreed at the hearing that this request was no longer at issue, so the motion is **DENIED AS MOOT** with respect to Request for Production 12.

[2] At the hearing, Defendant represented that April 18, 2007, was Plaintiff's 18th birthday.

executing an authorization form for records held by physicians who had cared for her during her pregnancy, but only to the extent that the records relate to her pregnancy.

**II.     ANALYSIS**

The Court finds that Defendant's requests seeking medical information are overbroad. As written, they would require Plaintiff to describe all treatment and produce any records for, say, broken ankles or sinus infections—conditions which clearly have no bearing on the issues in this case and are therefore not reasonably calculated to lead to the discovery of admissible evidence. Defendant has made a showing, however, that Plaintiff has received treatment for certain mental health issues before (and perhaps after) her termination. The question, therefore, is whether any or all information about Plaintiff's mental health is discoverable.[3]

Plaintiff announced in her response to the motion that it was her intention to "waive" any claim for emotional injury beyond the "garden variety" type. Plaintiff contends that information about her mental health is not discoverable because she asserts only "garden variety" claims of emotional distress for embarrassment and humiliation. Defendant has expressed its position that, even for "garden variety" claims of emotional distress, a plaintiff's medical treatment is relevant in order to show that other stressors may have contributed to her distress.

The term "garden variety" was bandied about repeatedly in the parties' pleadings and in their arguments at the hearing. As demonstrated by the cases cited by the parties, however, the definition of the term is, at best, nebulous. Courts have attached the label to various sorts of claims, often with polar results. *Compare Combe v. Cinemark USA, Inc.*, 2009 WL 3584883, *2 (D. Utah 2009)

---

[3] This Order addresses only the scope of discovery under Fed. R. Civ. P. 26(b). It does not address the circumstances in which a Rule 35 medical examination may be compelled.

(holding that "[m]edical records relating to treatment and counseling are relevant even when [a] plaintiff seeks 'garden variety' emotional damages"), *with Wright v. Marshall Mize Ford*, No. 1:09-cv-139, [Doc. 16] (E.D. Tenn. Dec. 2, 2009) (holding that a plaintiff's mental health records for reasons unrelated to his termination were "undiscoverable as irrelevant" to "garden variety" emotional distress claims). The case law has been ambivalent even within single opinions. *See Kennedy v. Cingular Wireless*, 2007 WL 2407044 (S.D. Ohio 2007) (recognizing as a "general principle" that medical records "which might tend to show other stressors . . . at or about the same time [as the alleged wrong] and which could account for some or all of the emotional suffering . . . are discoverable" even for "garden variety" claims, but also indicating that if a plaintiff seeks damages only for "the emotional distress that normally accompanies a wrongful discharge," then "other stressors . . . , whether revealed in records of medical treatment or elsewhere," might be "completely irrelevant").

Based on a review of the cases, the Court concludes that simply labeling a claim as "garden variety" is unhelpful to the analysis. The Court therefore declines to limit discovery merely because a plaintiff characterizes her claim that way. Through her counsel during the hearing, however, Plaintiff defined what she meant by a "garden variety" claim for humiliation and embarrassment, pain and suffering, and emotional distress. Specifically, Plaintiff clarified that she makes no claim for an "ongoing" mental, emotional, or psychological injury and that she does not intend to make such a claim. Plaintiff also asserted that she has had no mental health treatment as a result of Defendant's actions and that she will not call any expert witnesses, including treating physicians, to testify about any mental, emotional, or psychological distress. Plaintiff also does not claim any physical manifestations of emotional injury resulting from Defendant's allegedly unlawful conduct.

4

The Court agrees that, with these limitations, a "garden variety" claim for embarrassment or humiliation, pain and suffering, and emotional distress does not warrant extensive medical discovery. While a plaintiff who places her actual mental condition at issue must acquiesce to discovery demands designed to explore other possible causes of her mental condition, a plaintiff who merely claims she has suffered the sort of damages that would ordinarily flow from the alleged wrong has not placed her actual mental condition at issue, and medical discovery is therefore unlikely to lead to admissible evidence. Even if a plaintiff's medical records were marginally relevant in these circumstances, moreover, their discovery would be unduly burdensome in light of any likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

A plaintiff, however, cannot have it both ways: she cannot claim that her medical records are undiscoverable while reserving her right to submit proof of her actual mental condition at trial. *See Green v. Mich. Dept. of Nat'l Res.*, 2009 WL 1883532 (E.D. Mich. 2009) (granting motion to compel medical examination where plaintiff stated he had not retained a medical expert "at this time"). Indeed, the scope of discovery under Rule 26 is intended to be as broad as necessary to allow an opposing party to prepare for trial without fear of surprise. Accordingly, to avoid the burden of medically-related discovery, a plaintiff must not open the door to such discovery.

Plaintiff has not opened the door to broad medical discovery in this case. First, she disclaims any intention of submitting medical proof or expert testimony of her mental condition. *See Wright*, No. 1:09-cv-139, [Doc. 16]. Second, she agrees she is suffering no ongoing mental injury from the alleged wrong. *See id.*; *Kennedy*, 2007 WL 2407044, at *3. And finally, she agrees she will not offer testimony that she is suffering from specific mental conditions (e.g., depression) or is experiencing physical manifestations of her emotional distress. *See Green*, 2009 WL 1883532, at

5

*2-3. In other words, she has committed, in advance, to restrict her proof of emotional distress to a showing that she personally experienced the type of embarrassment or humiliation that would normally accompany the alleged wrong, without reference to her actual mental condition. She may testify, for example, that she was humiliated when she told her friends she was fired, but she may not testify that she was *so humiliated that* she suffered from clinical depression.

Contrary to Defendant's position, Plaintiff is not required to stipulate to some artificial "cap" on the damages that can be recovered for embarrassment and humiliation. Defendant cites *Olsen v. County of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009), for the proposition that "garden variety" humiliation and embarrassment "*generally* merit $30,000 to $125,000 awards." (Emphasis added). The Court rejects the argument that a claim for emotional injury transcends its "garden variety" status simply because the plaintiff places a high value on it. It is the jury's province to decide the monetary value of the emotional distress arising from humiliation and embarrassment that a plaintiff has proven. *See Fischer v. United Parcel Service, Inc.*, 390 F. App'x 465, 472 (6th Cir. 2010) (approving $650,000 award for emotional damages with no medical proof). Plaintiff has agreed to limitations on types and methods of *proof*, not to a limitation of the award itself. If the award is unreasonable relative to the proof, then a post-trial motion is the appropriate remedy.

Considering the disputed discovery requests in light of these principles, the Court notes first that the parties have not yet defined what specific medical records (if any) are actually at issue given Plaintiff's clarified "garden variety" claim. Plaintiff's counsel was unable to say with certainty what general types of medical treatment Plaintiff has received. In addition, Plaintiff does not appear to dispute that her pregnancy is at issue in this case. Accordingly Defendant's motion is **GRANTED IN PART** with respect to Interrogatory 6. Plaintiff shall respond to Interrogatory 6 by identifying

only the name, contact information, and area of practice for any medical providers by whom she has been treated from January 2009 to the present. Plaintiff is not required, at this time, to describe the specific reasons for her visits or the diagnoses and treatments provided, or to provide information about all providers she has seen since her 18th birthday. The remaining disputed discovery requests seeking medical information are **DENIED** as overbroad and not likely to lead to the discovery of admissible evidence. However, the Court notes that Plaintiff has not been deposed yet, and if Plaintiff opens the door to her actual mental condition by claiming she sought treatment, suffered ongoing mental injury, or experienced physical manifestations of emotional distress because of Defendant's allegedly unlawful conduct, then this matter may be addressed further as necessary.

Finally, unrelated to the central issue before the Court, Defendant sought the production of Plaintiff's cellular telephone records while she was employed by Defendant in its Request for Production 39. Plaintiff initially objected that the records were not relevant, but abandoned that objection after Defendant posited that Plaintiff was fired in part because she violated Defendant's cellular telephone use policy. The Court **FINDS** the cellular phone records to be discoverable and **GRANTS** the motion to compel with respect to Request for Production 39. Plaintiff is **ORDERED** to produce any records responsive to that request. The Court notes, however, that Plaintiff claims neither she nor her cellular service provider possesses any such records.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE